UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DOE, | : |
| | :   **Civil Action No:** |
| **Plaintiff,** | : |
| -against- | : |
| YALE UNIVERSITY and YALE UNIVERSITY BOARD OF TRUSTEES, | : |
| **Defendants.** | : |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S *EX PARTE* MOTION TO PROCEED UNDER
<u>PSEUDONYM AND FOR PROTECTIVE ORDER</u>**

**LAW OFFICES OF WILLIAM BILCHECK, JR.**
Attorney for Plaintiff
12 Brookside Road
P.O. Box 281
Madison, CT 06443
(203) 245-6252

**NESENOFF & MILTENBERG, LLP**
Attorneys for Plaintiff
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500

Plaintiff John Doe ("Plaintiff"), by his attorneys, Nesenoff & Miltenberg, LLP, and William B. Bilcheck, Jr., hereby seek authorization to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff. In light of the serious nature of the allegations contained in the Complaint, Plaintiff is justifiably concerned about the possibility of acts of reprisal that could further prevent Plaintiff from proceeding with his future endeavors, and inflict further harm. Plaintiff's identity as described in the Complaint should not be disclosed to the public due to the nature of the allegations in said Complaint. See Declaration of William B. Bilcheck Jr, Esq. attached to Plaintiff's *Ex Parte* Motion to Proceed Under Pseudonym and for Protective Order.

Plaintiff is prepared to provide a statement of his true identity under seal, upon the Court's request.

## STATEMENT OF FACTS

Plaintiff's parents immigrated to the United States in 2011; they raised him and his two siblings in New York.

Prior to matriculating to Yale University, Plaintiff attended, with scholarship, a prestigious New York City university-preparatory high school, which demonstrated Plaintiff's exceptional intellectual and leadership potential. During high school, Plaintiff taught kindergarten part time and participated in a mentorship program for underprivileged students.

Defendants' suspension will lead to Plaintiff being denied the opportunity to continue with his Yale University education, participation in Yale University's prestigious Brady-Johnson Program in Grand Strategy, and employment with a well-known highly respected Wall Street Investment Firm for the summer of 2018. The summer position would have been Plaintiff's second consecutive summer position with this firm which is a precursor to a full-time position following graduation in May 2019. The marking of Plaintiff's academic transcript with two semesters of suspension for a violation of student conduct policy will permanently deny Plaintiff

educational and career opportunities. Moreover, Plaintiff has been ostracized from his friends and from the campus community, made a social pariah, and forever damaged emotionally by his suspension.

On September 18, 2017 Jane Roe and Sally Roe, three (3) minutes apart, filed complaints against the plaintiff for incidents that allegedly took place respectfully 15 months and 10 months prior to the filing date. It is undisputed that Jane Roe and Sally Roe were longtime friends. What is also undisputed is that the two (2) complainants were texting each other while listening to each other's testimony to provide one cohesive story during Defendants' panel hearing.

Jane Roe's initial allegation made against the Plaintiff pertains to a night in Paris, France back in June 2016. The complainant alleges that as the two walked between a party at a mutual friend house's and a nightclub, Plaintiff placed his hand on her buttock.

During Yale's investigation and hearing, none of the other individuals who were present in Paris at the time of the alleged incident ever gave testimony that Plaintiff in fact placed his hand on the complaint's buttock. Additionally, Yale's Fact-Finder failed to interview one of the witnesses who was present.

The complainants both alleged that on November 18, 2016 that during a bus ride from New Haven to Cambridge that Plaintiff, in separate incidents, inappropriately touched them. One complainant alleges Plaintiff touched her buttock and the other alleges he touched her breast and buttock.

Jane Roe alleges that Plaintiff sat down next to her on the bus and grabbed her right buttock. However, when questioned by Yale's Fact-Finder, the complainant stated "She does not

remember if she said anything, and does not recall who was sitting or standing nearby who might have seen what happened to her."

Sally Roe claims that Plaintiff sat down proceeded to squeeze her breast and buttock. Again, this allegation was not corroborated by any of the individuals present at the time of the alleged incident. In fact, a witness, identified by the complainant who confirmed that an interaction took place between the complainant and plaintiff confirmed that an interaction did occur but <u>did not include groping</u>. Another witness indicated that Plaintiff put his arm around her and whispered in her ear. This witness never advised the Fact-Finder that Plaintiff groped the complainant.

During the hearing, Sally Roe changed her statement to claim that the alleged groping had been the side of her breast (also known as the armpit or ribcage) and the side of her butt (also known as the hip or upper high).

Yale's Fact-Finder interviewed fourteen witnesses, eleven recall *no interaction whatsoever* between the complainants and me. **<u>More importantly, not one witness stated that they saw me grope the complainants.</u>**

The Fact-Finder interviewed the complainants for a total of seven (7) interviews: four (4) with the first complainant and three (3) with the second. Moreover, the Fact-Finder met with eight (8) witnesses identified by the complainants **<u>before</u>** ever meeting with the Plaintiff. When the fact-Finder did interview Plaintiff, she only met with me on two (2) occasions.

Following the Fact-Finder's investigation, the case proceeded to a hearing. Although Yale adjudicated both complainants' allegation in one single hearing both complainants had access to listen to each other's statements as they were made to the panel. After one complainant provided an identical statement to the panel, as the other complainant, Plaintiff's advisor

4

inquired if the two (2) complainants were listening to each other's statements. Once questioned, Defendants. justified their failure to sequester the complainants by saying that a joint hearing permitted the witnesses to hear each other's statements

Not only did the complainants at times give identical statements to the hearing panel, but they were caught actually texting each other throughout the panel hearing which included specific texts about the hearing and Plaintiff's testimony. Instead of immediately declaring a mistrial, as requested by Plaintiff's advisor, as it was clear that the credibility of both the complainants and the hearing panel had been compromised, the UWC simply asked that the complainants voluntarily provide copies of their texts. As this was voluntary the panel had no way of knowing how many texts had been deleted or excluded from those proffered by the complainants. The UWC not only didn't declare a mistrial, but Yale's General Counsel, Mr. Rose, required the Plaintiff, as respondent, to provide him with evidence from the text messages to prove that the hearing was tainted

The hearing proceeded without any remedy to above noted violations and the panel found the Plaintiff responsible for alleging "groping" the complainants despite the fact that Yale has no definition of "groping" in their written policy. After being found responsible, the Plaintiff was suspended from Yale for the upcoming Spring 2018 semester and the following Fall 2018 semester. On January 3, 2018 Plaintiff filed an appeal in accordance with Yale's policies and procedures. On January 12, 2017 Plaintiff's appeal was denied.

## **ARGUMENT**

Many federal courts have permitted parties to proceed anonymously when special circumstances arise. Generally, in determining whether to permit a party to proceed anonymously, a court "must balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party."

*Plaintiffs I Thru XXIII v. Advanced Textile Corp.,* 214 F. 3d 1058, 1068 (9th Cir. 2000). The Second Circuit has articulated a non-exhaustive list of factors for conducting this balancing test: (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice, if any, differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff. <u>Plaintiff v. Cuomo</u>, No. 10-CV-1534 TJM/CFH, 2013 WL 1213174, at *5 (N.D.N.Y. 2013). As outlined below, a balancing of the above-noted factors leads to the inevitable conclusion that Plaintiff be permitted to proceed anonymously in this litigation.

    **A. The litigation involves matters that are highly sensitive and of a personal nature.**

    Plaintiff should be permitted to proceed under a pseudonym given the highly sensitive and personal nature of this litigation. Plaintiff does not merely contend that the revelation of his

name would result in embarrassment or public humiliation. Rather, Plaintiff notes the highly sensitive nature and privacy issues that could be involved with being falsely linked to multiple instances of alleged sexual misconduct. In fact, numerous courts around the country have permitted plaintiffs alleging parallel claims against colleges and universities to proceed anonymously. *See e.g. John Plaintiff v. Columbia University and Trustees of Columbia University,* 2014 WL 6471520 (S.D.N.Y. 2014); *Plaintiff v. Univ. of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009); *Plaintiff v. Univ. of Massachusetts-Amherst*, 2015 WL 4306521 (D. Mass. 2015); *Plaintiff v. Univ. of S. Florida Bd. of Trustees*, 2015 WL 3453753 (M.D. Fla. 2015); *Plaintiff v. Salisbury Univ.,* 2015 WL 3478134 (D. Md. 2015); *Plaintiff v. Univ. of Montana*, 2012 WL 2416481 (D. Mont. 2012)("With respect to the individual students involved in the Student Conduct Code proceeding, as well as the witnesses and University Court members involved in that proceeding, the Court finds that the interests of those individuals in avoiding undue embarrassment, harassment, and disclosure of sensitive private information outweigh the public's need to know their names," *citing Plaintiffs I–XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1068–69 (9th Cir.2000)). Similarly, Plaintiff here should be permitted to proceed anonymously due to the highly sensitive and personal nature associated with being falsely accused of sexual misconduct.

### B. Disclosure of Plaintiff's identity would result in significant harm to Plaintiff.

In addition, Plaintiff should be permitted to proceed anonymously in this matter as the revelation of his identify would result in significant harm to Plaintiff, the exact type of which he seeks to remedy by the commencement of this lawsuit. Specifically, if Plaintiff were required to reveal his identity, any ultimate success in this matter would be negated by the disclosure of his name. Namely, even if he were to achieve his objective of removing the sanction from all his

academic records, Plaintiff would nonetheless be significantly hindered in his ability to pursue future career and educational endeavors, including graduate studies, as any entity or employer would undoubtedly have access to the records related to the instant matter and discover that Plaintiff was accused of sexual misconduct. It is widely known that the likelihood of acceptance as a transfer student for an undergraduate degree at an institution with a similar academic reputation, and/or to a graduate institution of high caliber, is already significantly reduced in light of the high number of applicants and stiff competition, but it is almost nil when a plaintiff must content with the social stigma associated with being found responsible and expelled for "sexual misconduct," regardless of whether the decision is ultimately overturned as a result of litigation.

Based on the foregoing, Plaintiff should be permitted to proceed anonymously, as requiring him to reveal his identity would result in significant harm to Plaintiff, including the exact damages he seeks to remedy in this matter: namely, physical, psychological, emotional and reputational damages, economic injuries and the loss of educational and career opportunities.

**C. Defendants will not be prejudiced by allowing Plaintiff to proceed pseudonymously.**

Further, Plaintiff should be permitted to proceed anonymously as Defendants will not be prejudiced in any way by proceeding against an anonymous party. "Other than the need to make redactions and take measures not to disclose plaintiff's identity, defendants will not be hampered or inconvenienced merely by Plaintiff's anonymity in court papers." *Plaintiff No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006). Significantly, defendants are already aware of Plaintiff's true identity. Thus, there is no doubt that defendants will have an unobstructed opportunity to conduct discovery, present their defenses and litigate this matter, regardless of whether Plaintiff identifies himself or proceeds anonymously. Accordingly, Plaintiff must be permitted to proceed

anonymously in this action as revealing his name will cause significant prejudice to Plaintiff, while proceeding anonymously will not hinder defendants in any way.

### D. There is a weak public interest in knowing Plaintiff's identity.

Plaintiff should also be permitted to proceed in this action anonymously as the public does not have a strong interest in knowing his identity. Considering the purely legal nature of the claims presented (i.e. Defendants violated Plaintiff's right to fair process in violation of Title IX and other federal and/or state law), there is a weak public interest in learning Plaintiff's identity as an individual. The public's interest in this matter would not be furthered by disclosing Plaintiff's identity, as his challenges to Yale's biased and unfair investigatory process concern a larger association than the interest of an individual plaintiff; they affect the male student population at Yale as a whole. *See Plaintiff No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006).

While in the past courts disfavored allowing plaintiffs to proceed anonymously except in extreme circumstances, the nature of the internet today is such that any plaintiff is readily identifiable, and his information accessible, via a simple online search. Thus, courts must be willing to afford additional protective measures to avoid further damage to a plaintiff involved in a matter concerning such egregious and unfounded accusations as the present one. Here, if Plaintiff were required to reveal his name, even if Plaintiff were to succeed on his claims against defendants, the public's access to his identity would result in further damage to his future educational and career endeavors, resulting in additional mental, emotional and psychological harm, the very harms which he seeks to remedy in this action.

Thus, there is simply nothing about the status of the Plaintiff that would heighten any public interest beyond the normal public interest in any judicial proceedings sufficient to

outweigh Plaintiff's right to privacy. Moreover, the public's knowledge will only be minimally restricted as it will still know what is alleged to have occurred that resulted in charges of sexual misconduct being filed, and how the defendants investigated and adjudicated those charges. Allowing Plaintiff to proceed anonymously will not significantly obstruct the public's interest in this matter. Accordingly, there is not a strong public interest in knowing Plaintiff's identity as an individual, as the issues presented to this Court concern a much greater population of potential plaintiffs.

Based on the foregoing, in consideration of the balancing of relevant factors, the Court should allow Plaintiff to employ a pseudonym in this matter. The interests of defendants and/or the public will not be harmed at this early stage of the case if Plaintiff's name is not revealed. Plaintiff and his attorneys are prepared to address measures to protect the confidentiality of his identity should the Court require disclosure to the public at a later stage in the proceedings.

## CONCLUSION

For these reasons and such other reasons as may appear just to the Court, Plaintiff requests that his Motion to Proceed Under Pseudonym and for Protective Order be granted in its entirety.

**Dated:** New York, New York
January 18, 2018

**Respectfully submitted,**

**LAW OFFICES OF WILLIAM B. BILCHECK, JR.**

**By:** */s/ William B. Bilcheck Jr*
William B. Bilcheck, Jr. *(Fedeal Bar No. CT04402)*
12 Brookside Road
Madison, Connecticut 06443
(203) 245-6252
madctatty@aol.com

**NESENOFF & MILTENBERG, LLP**

**By: /s/ Andrew T. Miltenberg**
**Andrew T. Miltenberg, Esq. (pro hac vice admission pending)**
**Stuart Bernstein, Esq. (pro hac vice admission pending)**
**Phillip Byler, Esq.     (pro hac vice admission pending)**
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**
**amiltenberg@nmllplaw.com**
**sbernstein@nmllplaw.com**
**pbyler@nmllplaw.com**

*Attorneys for Plaintiff*