UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DOE, | : |
| | : Civil Action No: |
| | : |
| Plaintiff, | : |
| | : |
| | : |
| -against- | : |
| | : |
| | : |
| YALE UNIVERSITY and YALE UNIVERSITY BOARD OF TRUSTEES, | : |
| | : |
| | : |
| Defendants. | : |

**DECLARATION OF WILLIAM B. BILCHECK, JR., ESQ.
IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION TO PROCEED
<u>UNDER PSEUDONYM AND FOR PROTECTIVE ORDER</u>**

**WILLIAM B. BILCHECK, JR., ESQ.** hereby declares subject to the penalties of perjury pursuant to 28 U.S.C. § 1746:

1. I am admitted to practice in the courts of the State of Connecticut and am a member of the Bar of the Connecticut Courts. I am a member of the Law Offices of William B. Bilcheck, Jr. attorney for the plaintiff, John Doe ("Plaintiff").

2. I submit this declaration in support of Plaintiff's *Ex Parte* Motion to Proceed Under Pseudonym and for Protective Order.

3. In the instant action, Plaintiff seeks redress due to the actions, inactions, omissions, errors, flawed procedures and/or overall failure of by Defendants Yale University ("Defendant Yale" or "Yale" or the "University") and Yale University Board of Trustees ("Defendant Board of Trustees") (collectively, "Defendants") to provide Plaintiff with a meaningful standard of due process, basic fairness, and equity concerning false allegations of outside-the-clothing "groping" fellow Yale students Jane Roe and Sally Roe.

4.     Plaintiff's parents immigrated to the United States in 2011; they raised him and his two siblings in New York.

5.     Prior to matriculating to Yale University, Plaintiff attended, with scholarship, a prestigious New York City university-preparatory, which demonstrated Plaintiff's exceptional intellectual and leadership potential. During high school, taught kindergarten part-time and participated in a mentorship program for underprivileged students.

6.     Defendants' suspension will lead to Plaintiff being denied the opportunity to continue with his Yale University education, participation in Yale University's prestigious Brady-Johnson Program in Grand Strategy, and employment with a well-known highly respected Wall Street Investment Firm for the summer of 2018. The summer position would have been Plaintiff's second consecutive summer position with this firm which is a precursor to a full-time position following graduation in May 2019. The marking of Plaintiff's academic transcript with two semesters of suspension for a violation of student conduct policy will permanently deny Plaintiff educational and career opportunities. Moreover, Plaintiff has been ostracized from his friends and from the campus community, made a social pariah, and forever damaged emotionally by his suspension.

7.     On September 18, 2017 Jane Roe and Sally Roe, three (3) minutes apart, filed complaints against the plaintiff for incidents that allegedly took place respectfully 15 months and 10 months prior to the filing date.  It is undisputed that Jane Roe and Sally Roe were longtime friends. What is also undisputed is that the two (2) complainants were texting each other while listening to each other's testimony to provide one cohesive story during Defendants' panel hearing.

8.     Jane Roe's initial allegation made against the Plaintiff pertains to a night in Paris,

2

France back in June 2016. The complainant alleges that as the two walked to a party at a mutual friend's house and a nightclub, Plaintiff placed his hand on her buttock.

9. During Yale's investigation and hearing, none of the other individuals who were present in Paris at the time of the alleged incident ever gave testimony that Plaintiff in fact placed his hand on the complaint's buttock. Additionally, Yale's Fact-Finder failed to interview one of the witnesses who were present.

10. The complainants both alleged that on November 18, 2016 that during a bus ride from New Haven to Cambridge that Plaintiff, in separate incidents, inappropriately touched them. One complainant alleges Plaintiff touched her buttock and the other alleges he touched her breast and buttock.

11. Jane Roe alleges that Plaintiff sat down next to her on the bus and grabbed her right buttock. However, when questioned by Yale's Fact-Finder, the complainant stated "She does not remember if she said anything, and does not recall who was sitting or standing nearby who might have seen what happened to her."

12. Sally Roe claims that Plaintiff sat down proceeded to squeeze her breast and buttock. Again, this allegation was not corroborated by any of the individuals present at the time of the alleged incident. In fact, a witness, identified by the complainant who confirmed that an interaction took place between the complainant and plaintiff confirmed that an interaction did occur but <u>did not include groping.</u> Another witness indicated that Plaintiff put his arm around her and whispered in her ear. This witness never advised the Fact-Finder that Plaintiff groped the complainant.

13. During the hearing, Sally Roe changed her statement to claim that the alleged groping had been the side of her breast (also known as the armpit or ribcage) and the side of her butt (also known as the hip or upper high).

14. Yale's Fact-Finder interviewed fourteen witnesses, eleven recall *no interaction whatsoever* between the complainants and me. **More importantly, not one witness stated that they saw Plaintiff grope the complainants.**

15. The Fact-Finder interviewed the complainants for a total of seven (7) interviews: four (4) with the first complainant and three (3) with the second. Moreover, the Fact-Finder met with eight (8) witnesses identified by the complainants **before** ever meeting with the Plaintiff. When the Fact-Finder did interview Plaintiff, she only met with me on two (2) occasions.

16. Following the Fact-Finder's investigation, the case proceeded to a hearing. Although Yale adjudicated both complainants' allegation in one single hearing both complainants had access to listen to each other's statements as they were made to the panel. After one complainant provided an identical statement to the panel, as the other complainant, Plaintiff's advisor inquired if the two (2) complainants were listening to each other's statements. Once questioned, Defendants. justified their failure to sequester the complainants by saying that a joint hearing permitted the witnesses to hear each other's statements

17. Not only did the complainants at times give identical statements to the hearing panel, but they were caught actually texting each other throughout the panel hearing which included specific texts about the hearing and Plaintiff's testimony. Instead of immediately declaring a mistrial, as requested by Plaintiff's advisor, as it was clear that the credibility of both the complainants and the hearing panel had been compromised, the UWC simply asked that the complainants voluntarily provide copies of their texts. As this was voluntary the panel had no

way of knowing how many texts had been deleted or excluded from those proffered by the complainants. The UWC not only didn't declare a mistrial, but Yale's General Counsel, Mr. Rose, required the Plaintiff, as respondent, to provide him with evidence from the text messages to prove that the hearing was tainted

18. The hearing proceeded without any remedy to above noted violations and the panel found the Plaintiff responsible for alleging "groping" the complainants despite the fact that Yale has no definition of "groping" in their written policy. After being found responsible, the Plaintiff was suspended from Yale for the upcoming Spring 2018 semester and the following Fall 2018 semester. On January 3, 2018 Plaintiff filed an appeal in accordance with Yale's policies and procedures. On January 12, 2017 Plaintiff's appeal was denied.

19. The procedural errors that prevented the hearing panel or decision maker from judging the matter fairly included: (1) a lack of due process by allowing the complainants to hear each other's testimonies; (2) the constitutional violation of dismissing the complainants' texting during the hearing and placing the burden of proof on Plaintiff to prove that collusion had occurred; (3) conflicts of interest that resulted in a biased adjudication; (4) lack of an official record of the hearing; (5) the failure to properly investigate and collect all available evidence; (6) the failure to thoroughly interview all relevant witnesses; (7) the complete disregard of contradictions and inconsistencies in the complainants' and witnesses' statements when making assessments of fact and credibility; (8) the improper inclusion of information in the Fact-Finder's report which the hearing panel and decision maker relied upon as a determination of Plaintiff's responsibility; (9) failure of the University to demonstrate a burden of proof using the preponderance of the evidence standard; (10) failure to define the policy violation; (11) lack of a rationale for the Decision and Sanction; and (12) the imposition of an unduly harsh and

unwarranted sanction of suspension. All of these procedural errors, individually and when taken together, unfairly and materially affected the outcome of Plaintiff's case. (Cmplt. ¶ 169.)

20. Challenges to university disciplinary proceedings for sex discrimination as falling in two categories: (1) "erroneous outcome" cases, in which "the claim is that plaintiff was innocent and wrongly found to have committed an offense"; and (2) what some courts have called "selective enforcement" cases, but are better called "severity of penalty/selective initiation" cases, in which "the claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or decision to initiate the proceeding was affected by the student's gender." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994).

21. A Title IX "erroneous outcome" occurred in this case because Plaintiff was innocent and wrongly found to have committed sexual assault and gender bias was a motivating factor for the same reasons that caused the Second Circuit in *Doe v. Columbia*, 831 F.3d 46 (2016), to rule that gender bias was pleaded: the lack of due process, the treatment of facts not in accordance with the evidence, investigator prosecutorial behavior and bias, political pressures from the campus and from the federal government.

22. A Title IX sanction of undue severity -- two semesters of suspension for year old incidents of over-the-clothing "groping" that no one else said happened -- was issued because of gender bias that treats males as rapists who need to be punished severely. Plaintiff received the same sanction as three male respondents who were disciplined in the period July 2016 to July 2017 -- suspension -- but those three male respondents were found to have engaged in non-consensual sexual intercourse, a far more serious matter than outside-the-clothing "groping."

23.    Plaintiff therefore brings this action to obtain relief based on causes of action for, among other things, violations of Title IX of the Education Amendments of 1972, breach of contract and other state law causes of action.

24.    In light of these facts, Plaintiff should be permitted to protect his identity by filing the Complaint under a pseudonym.

**WHEREFORE**, the Court should grant Plaintiff's application in its entirety, and should order such further and other relief as the Court deems just and proper.

I declare under the penalty of perjury that the foregoing is true and correct, pursuant to Title 28, United States Code, Section 1746.

**Dated: New York, New York**
      **January 18, 2018**

*William B. Bilcheck Jr*
**William B. Bilcheck, Jr., Esq.-CT04402**