**EXHIBIT B**

# Yale Sexual Misconduct Policies and Related Definitions

Yale University is committed to maintaining and strengthening educational, working, and living environments founded on mutual respect in which students, faculty, and staff are connected by strong bonds of intellectual dependence and trust. Sexual misconduct is antithetical to the standards and ideals of our community. Therefore, Yale University prohibits all forms of sexual misconduct. Yale aims to eradicate sexual misconduct through education, training, clear definitions and policies, and serious consequences for policy violations. The University Title IX Coordinator has responsibility for ensuring compliance with Yale's policies regarding sexual misconduct. The University-Wide Committee on Sexual Misconduct (UWC) and the Title IX coordinators address allegations of sexual misconduct.

These policies apply to all members of the Yale community as well as to conduct by third parties (i.e., individuals who are not students, faculty, or staff, including but not limited to guests and consultants) directed toward university students, faculty, or staff members. Conduct that occurs in the process of application for admission to a program or selection for employment is covered by these policies.

Many forms of sexual misconduct are prohibited by federal law, including Title IX of the education amendments of 1972, and by Connecticut statutes, and could result in criminal prosecution or civil liability.

## Sexual Misconduct
Sexual misconduct incorporates a range of behaviors including sexual assault, sexual harassment, intimate partner violence, stalking, voyeurism, and any other conduct of a sexual nature that is nonconsensual or has the purpose or effect of threatening, intimidating, or coercing a person.

Much sexual misconduct includes nonconsensual sexual contact, but this is not a necessary component. For example, threatening speech that is sufficiently severe or pervasive to constitute sexual harassment will constitute sexual misconduct. Making photographs, video, or other visual or auditory recordings of a sexual nature of another person without consent constitutes sexual misconduct, even if the activity documented was consensual. Similarly, sharing such recordings or other sexually harassing electronic communications without consent is a form of sexual misconduct. All members of our community are protected from sexual misconduct, and sexual misconduct is prohibited regardless of the sex or gender of the harasser.

Violations of Yale's Policy on Teacher-Student Consensual Relations and its Policy on Relationships between Staff Members are also forms of sexual misconduct.

## Sexual Harassment
Sexual harassment consists of unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature on or off campus, when: (1) submission to such conduct is made either explicitly or implicitly a condition of an individual's employment or

academic standing; or (2) submission to or rejection of such conduct is used as the basis for employment decisions or for academic evaluation, grades, or advancement; or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work or academic performance or creating an intimidating or hostile academic or work environment. Sexual harassment may be found in a single episode, as well as in persistent behavior. All members of our community are protected from sexual harassment, and sexual harassment is prohibited regardless of the sex or gender of the harasser.

### Sexual Assault
Sexual assault is any kind of nonconsensual sexual contact, including rape, groping, or any other nonconsensual sexual touching. See Yale's definition of consent below for additional information.

### Sexual Consent
Under Yale's policies, sexual activity requires affirmative consent, which is defined as positive, unambiguous, and voluntary agreement to engage in specific sexual activity throughout a sexual encounter. Consent cannot be inferred from the absence of a "no;" a clear "yes," verbal or otherwise, is necessary. Consent to some sexual acts does not constitute consent to others, nor does past consent to a given act constitute present or future consent. Consent must be ongoing throughout a sexual encounter and can be revoked at any time.

Consent cannot be obtained by threat, coercion, or force. Agreement under such circumstances does not constitute consent. Consent cannot be obtained from someone who is asleep or otherwise mentally or physically incapacitated due to alcohol, drugs, or some other condition. A person is mentally or physically incapacitated when that person lacks the ability to make or act on considered decisions to engage in sexual activity. Engaging in sexual activity with a person whom you know—or reasonably should know—to be incapacitated constitutes sexual misconduct.

### Additional Guidance Regarding Sexual Consent
Consent can be accurately gauged only through direct communication about the decision to engage in sexual activity. Presumptions based upon contextual factors (such as clothing, alcohol consumption, or dancing) are unwarranted, and should not be considered as evidence for consent.

Although consent does not need to be verbal, verbal communication is the most reliable form of asking for and gauging consent. Talking with sexual partners about desires and limits may seem awkward, but it serves as the basis for positive sexual experiences shaped by mutual willingness and respect.

### Intimate Partner Violence
Intimate partner violence (IPV) occurs when a current or former intimate partner uses or threatens physical or sexual violence. IPV also may take the form of a pattern of behavior that seeks to establish power and control by causing fear of physical or sexual violence. Stalking may also constitute IPV.

2

### Stalking

Stalking is repeated or obsessive unwanted attention directed toward an individual or group that is likely to cause alarm, fear, or substantial emotional distress. Stalking may take many forms, including following, lying in wait, monitoring, and pursuing contact. Stalking may occur in person or through a medium of communication, such as letters, email, text messages, or telephone calls. In some circumstances, two instances of such behavior may be sufficient to constitute stalking.

### Policy on Teacher-Student Consensual Relations

The integrity of the teacher-student relationship is the foundation of the University's educational mission. This relationship vests considerable trust in the teacher, who, in turn, bears authority and accountability as a mentor, educator, and evaluator. The unequal institutional power inherent in this relationship heightens the vulnerability of the student and the potential for coercion. The pedagogical relationship between teacher and student must be protected from influences or activities that can interfere with learning and personal development.

Whenever a teacher is or in the future might reasonably become responsible for teaching, advising, or directly supervising a student, a sexual relationship between them is inappropriate and must be avoided. In addition to creating the potential for coercion, any such relationship jeopardizes the integrity of the educational process by creating a conflict of interest and may impair the learning environment for other students. Finally, such situations may expose the university and the teacher to liability for violation of laws against sexual harassment and sex discrimination.

Therefore, teachers must avoid sexual relationships with students over whom they have or might reasonably expect to have direct pedagogical or supervisory responsibilities, regardless of whether the relationship is consensual. Conversely, teachers must not directly supervise any student with whom they have a sexual relationship.

Undergraduate students are particularly vulnerable to the unequal institutional power inherent in the teacher-student relationship and the potential for coercion, because of their age and relative lack of maturity. Therefore, no teacher shall have a sexual or amorous relationship with any undergraduate student, regardless of whether the teacher currently exercises or expects to have any pedagogical or supervisory responsibilities over that student.

Teachers or students with questions about this policy are advised to consult with the University Title IX Coordinator, the Title IX coordinator of their school, the department chair, the appropriate dean, the Provost, or one of their designees. Students or other members of the community may lodge a formal or informal complaint regarding an alleged violation of this policy with the University Title IX Coordinator, with the Title IX coordinator of their school, or with the University-Wide Committee on Sexual Misconduct.

Violations of the above policies by a teacher will normally lead to disciplinary action. For purposes of this policy, "direct supervision" includes the following activities (on or off campus): course teaching, examining, grading, advising for a formal project such as a thesis or research,

supervising required research or other academic activities, serving in such a capacity as Director of Undergraduate or Graduate Studies, and recommending in an institutional capacity for admissions, employment, fellowships, or awards.

"Teachers" includes, but is not limited to, all ladder and non-ladder faculty of the University. "Teachers" also includes graduate and professional students and postdoctoral fellows and associates only when they are serving as part-time acting instructors, teaching fellows or in similar institutional roles, with respect to the students they are currently teaching or supervising. "Students" refers to those enrolled in any and all educational and training programs of the University. Additionally, this policy applies to members of the Yale community who are not teachers as defined above, but have authority over or mentoring relationships with students, including athletic coaches, supervisors of student employees, advisors and directors of student organizations, Residential College Fellows, as well as others who advise, mentor, or evaluate students.

[Policy on Relationships between Staff Members](#)
Staff are expected to avoid romantic or sexual relationships with employees (including temporary employees) for whom they have or might reasonably expect to have supervisory or reporting responsibilities.

Under no circumstances can supervisors directly supervise or evaluate any employee with whom they have a romantic or sexual relationship. If such a relationship exists or develops, the supervisor and employee must promptly disclose it to the Department Head or the Human Resources Generalist. Arrangements, which may include reassignment or relocation, will be made to address any issue of conflict of interest. Any decision affecting any aspect of employment (for example, transfer, promotion, salary, termination) must be made by disinterested and qualified supervisory personnel.

Violations of this policy will normally lead to disciplinary action, up to and including termination.

Individuals with questions about this policy or staff concerned about a romantic or sexual relationship in violation of this policy are encouraged to speak with their supervisor, [Human Resources Generalist](#), or any [Title IX coordinator](#). [See HR 600 Workplace Practices Policies](#).

4