**EXHIBIT L**

I am here today because I've been wrongly accused of sexual misconduct. Before discussing the allegations, I would like to briefly tell you a little bit about myself, as none of you know me personally other than the fact that I am being accused of sexual misconduct. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and raised my two siblings and me between New York and ▇▇▇▇▇ until 2011, when it became too dangerous for us to go there. I come from a physically affectionate culture, where we say hello with a hug and kiss on the cheek, and same- and opposite-sex interactions frequently involve touching that is not considered sexual.

My older sister recently graduated ▇▇▇▇▇▇▇▇ and is currently doing ▇▇▇▇▇▇▇▇, and my younger brother is a junior at ▇▇▇▇▇▇▇▇, where I studied. While in high school, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, taught kindergarten part time ▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and participated in a mentorship program for underprivileged students. I decided to attend Yale because of its strong sense of community and first-rate humanities program. Hoping to take advantage of the resources Yale offered, I enrolled in the ▇▇▇▇▇▇▇▇▇▇▇▇ my freshman year, and am majoring in ▇▇▇▇▇▇. Outside of the classroom, I am on the board of the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, write a ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, do a show for ▇▇▇▇▇▇, and was on ▇▇▇▇▇▇▇▇▇ team during my freshman and sophomore years. I have worked hard at Yale, and have enthusiastically contributed to the Yale community. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, which is contingent on a disciplinary background check, and for which I was selected based upon, among many stringent qualifications, my demonstrated ability to relate to others.

I was shocked and saddened to learn of the allegations made against me by ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. These two women, who are very close friends, made the allegations against me on the same day, within minutes of one another. We had all been friends during our

sophomore year, and although I have not spent time with either of them in nearly a year, the two women decided after they had dinner together in August 2017 to each make formal complaints against me. It was obvious to me after reading the Investigative Report that ▮▮▮▮ and ▮▮ ▮▮▮ had thoroughly discussed how they would word their allegations.

It appears that the two women spoke to those they enlisted as witnesses, and nearly all of the witnesses in the report are their friends. They likely encouraged these students to speak out against me, despite that fact that none of their witnesses stated that they had actually witnessed any of the claims made by either ▮▮▮▮ or ▮▮▮▮. ▮▮▮▮, in particular, mentioned repeatedly that she felt it was her personal duty as a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, or ▮▮▮▮, to file a complaint against me. Although ▮▮▮▮ are responsible for training others to intervene when they witness insensitive behavior, at no time did ▮▮▮▮ ever speak to me directly regarding anything I had done to which she objected.

I would first like to address the allegations that have been made against me of sexual assault in the form of groping. The first allegation pertains to a night in Paris. ▮▮▮▮ claims that as we walked between a house party and a nightclub, I placed my hand on her buttock. In ▮▮▮▮ recounting of the event, she forgets that a third witness, ▮▮▮▮, was present, and the fact-finder failed to interview ▮▮▮▮ despite my having written in my response on October 24, 2017 that she was present. As evidenced by photographs provided to the panel, ▮▮▮▮ was quite comfortable with physical contact between us. In fact, that night, she initiated most if not all of the physical contact between us. In one photo from that night, she has her arms wrapped around my torso, and in another, she is wrapping her leg around me, suggestively posing with her finger in her mouth.

███████ claims we were holding hands and "skipping together," and "the mood was happy and playful." She says she was doing this in order to "make sure I was all right…though I was not incapacitated." I was not having difficulty walking, nor did I initiate any contact with ███████. If I had been unsteady on my feet, it is unlikely that I would have been able to skip with ███████. While all of us were intoxicated, I was lucid on the walk. While we walked, there were brief moments when ███████ held my hand in a fun, jovial way, with no sexual undertones or overtones. I never saw any indication that ███████ was uncomfortable, nor that she thought I was making a sexual advance towards her. Her account reads, "███████ thinks she may have said no, but is not sure." I can assure the panel that she did not say no or object in any other way to anything I did that night, and moreover that any interaction with her was not sexual in nature, but completely friendly, with most contact being initiated by her. If ███████ had voiced an objection, ███████, ███████, or ███████ would almost certainly remember, and likely would have intervened. As evidenced by the photo taken by ███████, ███████ and I walked slightly ahead of the pack, and groping of her buttock would have been visible to those behind us. However, none of the witnesses saw any groping.

███████ and ███████ have been inseparable friends since freshman year, and it is expected that ███████ would come to the defense of her friend. ███████ had been drinking heavily that night, as evidenced in the photos, and she tells the investigator that there are holes in her memory. ███████ claimed that I was having difficulty walking, contrary to ███████ claims that we were holding hands and skipping, and that she was trying to make me focus. ███████ says, "She felt that there was always a fine line between his friendly but overly aggressive physicality and inappropriate touching." This statement is an outlier in the

interview as if ▮ had been asked to suggest if any inappropriate touching had ever occurred but did not follow up with examples or evidence.

None of my words or actions that night conveyed an intent or desire to engage in sexual activity with ▮, nor had I ever expressed or felt desire towards her beforehand. In fact, in the apartment, she had grabbed me gratuitously during a photo, and sat very close to me on the couch. In short, this was a fun, friendly night in which there was some touching, but nothing of a sexual nature. I saw ▮ frequently when we got back to Yale's campus later that year, and, as mentioned in the report, she came to a party at my parents' house, which she knew would be a similar environment to the night in Paris.

I will now move to the other allegation of groping, which the complainants claim took place on a bus from New Haven to Cambridge on November 18, 2016, over a year ago. It is important that the panel understand that ▮ and ▮ have been very close friends for a long time, and coordinated in bringing this complaint.

▮ account begins with a conversation in which I told her "I know I do some things I shouldn't do when I drink too much." The notion that in the midst of loud music and drinking that I would suddenly initiate a conversation about my supposed bad behavior is outlandish. Such a conversation did not take place. In fact, ▮ claimed this happened "early in the bus ride," yet for the first hour of the bus ride, I was seated at the back, away from her. ▮ ▮ erroneously claimed that I moved to the middle of the bus, with ▮ bottle in my hand, at the beginning of the bus ride, and called her over to initiate this supposed conversation. She summarizes the conversation to support her role as a ▮ and again makes unsubstantiated claims that my conduct had been "widely discussed by their peers." As throughout the report, ▮

fails to name those peers or to provide electronic evidence, such as texts or emails, to support her accusations.

Later on, ▮ claims I sat down next to her and grabbed her right buttock. The report reads, "She does not remember if she said anything, and does not recall who was sitting or standing nearby who might have seen what happened to her." ▮ again has made a claim that she cannot substantiate. It is certainly true that she never objected to anything I did or said to her at any point during the bus ride, because I never did anything objectionable. Moreover, such an incident would almost certainly have been noticed and responded to by those who were trained in bystander intervention. The bus was crowded, with hardly any room to move around freely.

Later, she says I pulled her forearm down. While it is possible that I lightly held her arm to lean in to talk, I can say unequivocally that such an action would not have been forceful, violent or sexual. ▮ stated it was "so hard that the next day she checked for bruising (there was none)." Further, "She recalls that a couple of male students nearby also said 'stop,' but does not recall who they were." This did not happen. The only male who claimed to have spoken to me is ▮, who claimed to have said "What the fuck!" but does not recall my grabbing ▮ ▮ arm. In any event, grabbing someone's arm is not a sexual act, and if she had done the same to me, I cannot imagine the panel would construe such an action as sexual. ▮ claimed the "incident felt sexual," but I do not see her basis for feeling this way, and that certainly would not have been my intention. As I have mentioned, I am a warm and affectionate person, and often touch my friends—male and female—but never in a sexual manner.

I have never displayed violent tendencies, and none of the witnesses claim to have seen anything involving physical force. In fact, thirteen of the fourteen witnesses did not see any interaction whatsoever between ▮ and me, much less groping. The only witness who says

he saw me interact with ▊▊ is ▊▊, who claims he saw me "trying to grab at ▊▊ legs." ▊▊ does not say when this happened, or what the circumstances were. Nowhere in ▊▊ account does she claim that I tried to grab at her legs. ▊▊ either misremembers what happened, or misconstrues brief, non-sexual incidental touches characteristic of our relationship, with sexual advances.

An important part of ▊▊ account involves ▊▊. Certain witnesses—such as ▊▊ and ▊▊—seem to allude to this interaction specifically, whereas others certainly allude to it indirectly, when they reference unspecified women. ▊▊ and I have a very intimate relationship, and what may have been perceived by others as inappropriate touching was not perceived as such by her, which she has confirmed to me. As stated in the report, the only touching that took place was between me and ▊▊, and me and ▊▊. Neither of these witnesses spoke to the fact-finder, and neither have ever complained in any way about my behavior. My impression of many of the witness accounts is that they are construing my behavior towards ▊▊ and ▊▊ as a broader indicator of sexually aggressive behavior. This is unfair, as my relationships with these two women—which continue today—are of a different nature than mine with anyone else on the bus. Some of the witnesses' claims regard "unspecified women", and so they must pertain to ▊▊ or ▊▊. I know with certainty that this is the case in ▊▊ claims, for example. She stated that by the end of the bus ride, "▊▊ and ▊▊ said they had been groped;" however, the complainants' themselves never claimed to have made these statements on the bus.

Now to move to ▊▊ account. ▊▊ claimed I told her "I want to fuck you," and proceeded to squeeze her breast and buttock. I had never had or appeared to have any sexual desire for ▊▊, and never made anything like a sexual advance towards her. In fact, there is

a photo, exhibit "O" on pg. 48, submitted by ▮ of a group on the party bus. The photo shows ▮ embracing a male by forcing his head against her breasts, and demonstrates that students on the bus were comfortable putting their arms around each other.

▮ stated I sat down on her right side and groped her with my left hand. I am right-handed and would not grab anything with my left hand. In all my relationships, I cannot envision a time when I put my left arm around someone; it would feel unnatural and uncomfortable. I may have rested my arm on her shoulder but could not, and would not, have reached around to grope her.

▮ had indicated that ▮ watched me grope her, and that he even indicated to her that he had seen something inappropriate. ▮ himself confirms that an interaction took place between ▮ and me. Importantly, however, ▮ states the behavior <u>did not include groping</u>.

Given that he watched my interaction with ▮ unfold, and that he allegedly stated, "Did I see what I just saw" afterwards, it is nearly impossible that I could have groped ▮ without ▮ noticing. The most he said was that it was his "sense that I was 'sexually pestering' ▮." It is my belief that ▮ and other witnesses extrapolated from my interactions with ▮ and ▮ that any interaction with a woman would be sexual. There is no other explanation for his perceiving an arm around the shoulder of a friend as sexual. This was a time when I was seeing ▮ frequently, and was friendly with her, and my behavior towards her was unequivocally not sexual. ▮, who lives with ▮, claimed that I put my arm around her and whispered in her ear. If he was attentive enough to notice whispering in the ear, it is likely he would have noticed any groping, yet did not see me grope ▮

███ The preponderance of the evidence, which includes two detailed witness accounts and my own account, certainly indicates that I did not grope ███.

Additionally, ███ claims I groped three different women, none of whom were ███ or ███. There were twelve women on the bus. Of those twelve, only two women—the two complainants—claim I groped them. This discrepancy indicates either that ███ misremembered the events, or is referring to my interactions with ███ and ███. This contributes to my deduction that my behavior towards ███ and ███ was misinterpreted by witnesses and applied to other women.

Of the fourteen witnesses interviewed, eleven recall *no interaction whatsoever* between the complainants and me. Most of the witnesses who claim to have had personal interaction with me—namely, ███, ███, ███—describe attempts to dance with them. However, these interactions did not include behavior defined as groping or sexual harassment. Dancing with someone is by no means a sexual act, and they made no claims that I pressed up against them. Moreover, they have not filed formal or informal complaints with the UWC.

███ lives with ███ and spent the most amount of time with me on the bus. Contrary to the false assertion of the fact-finder's report, I did not invite him on the bus, and never claimed to. I do not know why the fact finder made this assertion. He was closer with the students on the bus than I was, and was probably invited by ███. He remembers no unusual interactions whatsoever. ███ knew the nature of my relationship with ███ and ███ better than others on the bus, which explains his assessment that none of the interactions on the bus were unusual. What he saw as normal others misinterpreted as sexual.

Surprisingly, the fact finder chose not to ask if my demonstrative behavior extended to men as well as women. I frequently put my arms around my male friends, a sign of camaraderie and

friendship. Any of my male friends could tell you that I am affectionate around them, yet this is never perceived as a sexual act. The fact of the matter is we were all excited for a fun weekend, and my excitement manifested itself in some physical contact among friends. Construing my behavior on the bus as sexual implies that I lusted after every single person there, which is simply not the case.

The second allegation is sexual harassment, and is brought by ███████. Yale defines sexual harassment as one or more unwanted sexual advances that "have the purpose or effect of unreasonably interfering with an individual's academic performance." Before addressing the allegations specifically, I would like to point out to the panel that we are to consider my behavior at this party only to the extent that it affected the complainant, ███████. ███████ claims that observing my behavior at a Fence Club party constitutes sexual harassment towards her. I am surprised by the claim that I was "clearly pressing [a woman] for sexual interaction" with no substantiation provided. I recall dancing with women at the party, but never against their objections. If it is ever communicated to me that someone is uninterested in dancing with me, I immediately back away. The individual who complained at the party—███████—claims that I danced suggestively, careened around the dancefloor, and fell on women. I was not informed that ███████ was a witness and did not know this until I read the report. ███████ and I had a brief sexual encounter in September 2016 and we have hardly spoken since. Additionally, ███████ is a roommate of ███████, which further prejudices her testimony. In any event, the alleged behavior is not of a sexual nature, and does not constitute a sexual advance. Furthermore, the woman in question is not filing a complaint with the UWC. Thus, the question is whether merely observing my "careening" created a hostile academic environment for ███████. Again,

it seems that behavior not intended to be sexual was perceived as such by certain people, yet not enough that any individual said she herself had been sexually harassed.

I understand that providing a safe and productive environment requires an educational and moral responsibility by Yale to set standards for conduct, and to address conduct that violates those standards. I signed onto those standards of conduct when I started my freshman year, and I have not violated the Yale code of conduct. Given the ▮▮▮ program's emphasis on intervention and communication, I find it implausible that ▮▮▮▮▮ would have quietly looked on as I sexually harassed her and her friends. Moreover, the timing of this complaint confuses me. While I know that I have not violated Yale's policy on sexual misconduct, I was also alarmed to hear that there had been an informal complaint against me, and, starting one year ago, I took steps to mitigate any discomfort caused. This formal complaint was doubly unsettling and surprising to me, as I've been more focused on my career and academic work, hardly going to parties at all.

The most frequently used word describing my behavior in this report is "weird." It is possible that my behavior one year ago was socially awkward, that I stood too close to people, or that I danced with people who would have preferred not to dance with me. I was not aware that this was the case at the time, and I was not made aware of this until seeing the fact finder's report. In general, acting "weird" is rarely intentional. More importantly, weird behavior does not constitute a violation of Yale's sexual misconduct policy, especially when the behavior is not sexual in nature. In light of all of this, it is clear that the preponderance of the evidence in this case indicates no violation of Yale's sexual misconduct policy.