**EXHIBIT M**

**CONFIDENTIAL**

UWC panel report to Dean Marvin Chun                                    December 15, 2017
Complainants: █████████████████████████████████████
Respondent: ███████████████████████████

**Introduction**

On November 27, 2017, the UWC held a hearing to address the complaints brought by ████████ ████████████████████████████████████████████ against ████████████ ███████████████████████████.

On September 18, 2017, ████████████ brought a complaint to the University-Wide Committee on Sexual Misconduct. The complaint involves an incident that allegedly took place on November 18, 2016, on a chartered bus to Cambridge, Massachusetts for the Harvard-Yale game. The complaint alleges that ████████████████ groped ██████████ left breast and buttock during the bus ride.

On September 18, 2017, ████████████████ brought a separate complaint to the University-Wide Committee. ████████████ complaint alleges that ████████████████ groped her on two occasions: first, on June 17, 2016 in Paris and then, on November 18, 2016 on the chartered bus to the Harvard-Yale game. The complaint further alleges that ████████████████████ behavior toward ████████ and his behavior toward other women which ████████ witnessed created a hostile academic environment for ████████.

████████████ participated in the hearing and was accompanied by her adviser ████████████ ████████████ participated in the hearing and was accompanied by her adviser ████████████. ████████████████ participated in the hearing and was accompanied by his adviser, Marybeth Sydor. The Panel thanks the parties and their advisers for participating in the hearing.

During the hearing, the Panel's questioning of the parties was informed by the report prepared by Dorit Heimer.

After the hearing the Panel requested supplemental fact-finding. A supplemental fact-finder's report was submitted on December 7, 2017. The parties had an opportunity to respond and, on December 12, 2017, the UWC received a response from ████████████████████. The complainants did not respond to the supplemental fact-finder's report. The Panel reconvened on December 15, 2017 to discuss the supplemental report and the response. The Panel determined that no further hearing was required.

**Policy**

The relevant part of the University's definition of sexual misconduct reads:

1

> *Sexual misconduct incorporates a range of behaviors including sexual assault, sexual harassment…and any other conduct of a sexual nature that is nonconsensual or has the purpose or effect of threatening, intimidating, or coercing a person.*

The University' definition of sexual assault in relevant part reads:

> *Sexual assault is any kind of nonconsensual sexual contact, including rape, groping, or any other nonconsensual sexual touching.*

The University's definition of sexual consent in relevant part reads:

> *…sexual activity requires affirmative consent, which is defined as positive, unambiguous, and voluntary agreement to engage in specific sexual activity throughout a sexual encounter. Consent cannot be inferred from the absence of a "no;" a clear "yes," verbal or otherwise, is necessary. Consent to some sexual acts does not constitute consent to others, nor does past consent to a given act constitute present or future consent. Consent must be ongoing throughout a sexual encounter and can be revoked at any time.*

The University's definition of sexual harassment in relevant part reads:

> *Sexual harassment consists of unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature on or off campus, when… such conduct has the purpose or effect of unreasonably interfering with an individual's work or academic performance or creating an intimidating or hostile academic or work environment. Sexual harassment may be found in a single episode, as well as in persistent behavior. All members of our community are protected from sexual harassment, and sexual harassment is prohibited regardless of the sex or gender of the harasser.*

**Undisputed Facts[1]**

The following relevant facts are not in dispute.
███████ and ██████████ were each in Paris on June 16, 2016 and attended a party at the home of a mutual friend, ████████. After that party, ██████████ and ███ █████ along with others from that party walked to an evening club called Dexter's.

On November 2, 2016 ████████████ and ████████ both attended a party sponsored by the Fence Club.

---

[1] Key findings of fact by the Panel are underlined.

2

On November 18, 2016, the respondent and the complainants rode from New Haven to Cambridge, Massachusetts on a party bus. A number of other people were on this bus ride.

The Panel accepts all of the above facts as undisputed.

**I. ▌complaint in connection with the events that took place in Paris on June 16, 2016**

**Key Findings and Explanations of the Panel**

▌ alleges that while walking with a group of other people to a club in Paris, ▌ groped her buttock three times in quick succession without her consent. ▌ denies that this groping occurred.

The Panel recognizes that both ▌ and ▌ were drinking that evening and that ▌ seems to have been very intoxicated, as is confirmed by ▌ and witnesses ▌ and ▌.

In his defense, ▌ cites the fact that no other person in their group who was walking on the boulevard reports having witnessed the groping. The Panel recognizes that the groping that is alleged by ▌ was brief and may not have been observed by others who were at some distance from ▌ and ▌.

The Panel finds credible ▌ account. It is consistent in the fact-finder's report and at the hearing and consistent with the report ▌ made to ▌ the day after the incident. The Panel finds convincing the narrow and specific nature of the allegation and the Panel finds no credible evidence to suggest ▌ had any motivation to be dishonest with her friend, the fact finder or the Panel.

*Conclusion*

In light of the complainant's consistently maintained report, the corroborating statement of ▌, and the narrow, specific nature of the claim, the Panel finds by a preponderance of the evidence that, in Paris on June 16, 2016, ▌ violated Yale's sexual misconduct policy by groping ▌ buttock.

**II. ▌complaint in connection with the bus ride from New Haven to Cambridge on November 18, 2016**

**Key Findings and Explanations of the Panel**

▌ alleges that ▌ groped her buttock on the chartered bus to the Harvard Yale game. ▌ denies groping ▌ at all. The Panel finds ▌ account more credible for the following reasons:

3

First, although none of the bus-riders interviewed (besides ▆▆▆▆) stated that they observed ▆▆▆▆▆▆▆▆ grope ▆▆▆▆▆, there is specific and corroborative evidence that supports the claim that the groping of ▆▆▆▆▆ took place. Two witnesses – ▆▆▆▆▆▆ and ▆▆▆▆▆▆▆▆ – said to the fact-finder that, during or soon after the bus ride, ▆▆ ▆▆▆▆ reported to them that ▆▆▆▆▆▆▆▆▆ had groped her.

Second, several witnesses reported that ▆▆▆▆▆▆▆▆▆▆ was inappropriately touching in an unwelcome fashion a number of the women on the bus. These witnesses include:

(1) ▆▆▆▆▆▆▆▆▆ who reported that ▆▆▆▆▆▆▆▆▆▆ would get up and go over to a woman who was sitting alone, sit down next to her, and either put his arm around her shoulder or on her leg. The woman would look uncomfortable and either push his arm off or get up and move away (p. 18 of the fact-finder's report).

(2) ▆▆▆▆▆▆▆ who reported that she and her brother, ▆▆▆, could see ▆▆▆▆▆▆ putting his hands on everyone including ▆▆▆ herself (p. 18).

(3) ▆▆▆▆▆ who noticed that ▆▆▆▆▆▆▆▆▆ kept going up to women and putting his arms on them in a way that looked "weird." ▆▆▆▆▆▆ reports that he heard women saying things like, "▆▆▆ go away and stop touching me" and he would move on to the next woman, making his way around to most of the women (p. 18).

(4) ▆▆▆▆▆▆▆▆▆ who reported that ▆▆▆▆▆▆▆▆▆ was going around putting "very heavy arms" around women in a "seemingly very drunk and unreciprocated way." Women looked uncomfortable and seemed to draw away from him. ▆▆▆▆▆▆ saw this happen to at least four or five women and experienced it herself (p. 19).

(5) ▆▆▆▆▆▆▆▆ who reported that she saw ▆▆▆▆▆▆▆▆▆ sit down next to one of her friends and grab her as if to kiss her. ▆▆▆▆▆▆ observed that her friend stood up and ▆▆▆▆▆▆▆▆ grabbed her buttock and her friend moved away. ▆▆▆ ▆▆▆▆▆▆ also says that ▆▆▆▆▆▆▆▆ tried to grab her and she pushed him away (p. 19).

(6) ▆▆▆▆ who reported that he saw ▆▆▆▆▆▆▆▆ grope at least three different women, and almost every woman on the bus was actively avoiding him (p. 19).

(7) ▆▆▆▆▆▆ in regard to a close friend, specifically recalled ▆▆▆▆▆▆▆▆ acting very aggressively toward the friend, putting his arms around her and on her leg and the friend kept trying to back away (p. 20).

(8) ▆▆▆▆▆▆▆▆▆ who reports seeing ▆▆▆▆▆▆▆▆▆ touching women's buttocks and putting his arms around their waists (p. 20).

(9) ▆▆▆▆▆▆▆▆▆ who reported that ▆▆▆▆▆▆▆▆▆ tried to dance with her, very close in an unwelcome fashion. She reports that eventually, one of her friends told him to back off and he did (p. 21).

4

(10) ▓▓▓▓▓▓ who saw his interactions with several women on the bus, his arms around them, very close and loud (p. 22).

(11) ▓▓▓▓▓▓ who reports that she "saw a drunken scenario unfold" where ▓▓ ▓▓▓▓▓▓ moved from woman to woman. She said that he was clearly drunk and acting weird. ▓▓▓▓▓▓ would repeatedly put himself between the dance aisle and a woman, closing her off with her back pressed against the seat (p. 22).

<u>The Panel finds these eleven reports about ▓▓▓▓▓▓ behavior on the bus credible and that they support the specific claim by ▓▓▓▓▓▓ that the inappropriate touching of ▓▓▓▓▓▓ took place.</u>

<u>Third, the Panel did not find credible the four explanations ▓▓▓▓▓▓ provided at the hearing or in the fact-finder's report in his defense against the allegation.</u>

(A) At the hearing, ▓▓▓▓▓▓ suggested that the various allegations about his inappropriate touching of women on the bus were due to a misconstrual of his roughhousing with ▓▓▓▓▓▓ and ▓▓▓▓▓▓, two women in the bus with whom he said he is close and who would have engaged in such contact consensually. However, the Panel did not find ▓▓▓▓▓▓ credible on this point because he specifically reported to the fact-finder (p. 14) that the only touching of women that he recalled was hand-to-hand touching with ▓▓▓▓▓▓ and ▓▓▓▓▓▓.

▓▓▓▓▓▓ does recall that ▓▓▓▓▓▓ was "physical" with her. ▓▓▓▓▓▓ reports that ▓▓▓▓▓▓ did have his arm around ▓▓▓▓▓▓ and she did not see this behavior as aggressive. The Panel notes, however, that several witnesses ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ reported seeing women draw or move away from ▓▓▓▓▓▓ after his inappropriate touching. If ▓▓▓▓▓▓ and ▓▓▓▓▓▓ were comfortable with ▓▓ ▓▓▓▓▓▓ touching and conduct as he asserts, it is unlikely that they were the women whom the witnesses saw being made uncomfortable by ▓▓▓▓▓▓ and moving to avoid him.

▓▓▓▓▓▓ explanation also does not address the following pattern of observations: (i) ▓▓▓▓▓▓ reported seeing ▓▓▓▓▓▓ cruising around the bus, moving close to women (p. 18). (ii) ▓▓▓▓▓▓ observed that ▓▓▓▓▓▓ was following girls around the bus and they were moving away in a group (p. 19). (iii) ▓▓▓▓▓▓ reported that she saw ▓▓▓▓▓▓ moving drunkenly between different women, sitting very close to them and the women looking uncomfortable (p. 20). (iv) ▓▓▓▓▓▓ described ▓▓▓▓▓▓ moving from woman to woman and repeatedly putting himself between the dance aisle and a women, closing her off with her back pressed against the seat (p. 22). And (v) ▓▓▓▓▓▓ noticed that ▓▓▓▓▓▓ kept going up to women and after being told to go away and stop touching them, he would move on to the next woman, making his way around to most of the women (p.18).

(B) ▇▇▇ claimed in the fact-finder's report and at the hearing that witnesses on the bus may have been motivated to make false claims about his behavior because he was late in arriving at the bus and because other students had animus directed toward him because of his political views. However, one witness, ▇▇▇, did not recall ▇▇▇ being late to the bus or notice any annoyance or animosity toward him, other than perhaps at his level of intoxication. Further, while there may have been political differences between ▇▇▇ and some others on the bus, the Panel saw no evidence that any witnesses (or the complainants) were motivated to give false accounts because of political differences. ▇▇▇ said that while there were distinct groups of friends on the bus, there was "no animosity" on the bus and he did not observe any hostility or animosity directed toward ▇▇▇ (p.20) ▇▇▇ said that the suggestion that there was political animosity toward ▇▇▇ was "preposterous" because she and ▇▇▇ had invited him and he had many friends on the bus (p. 20).

(C) ▇▇▇ asserted that he was not moving around the bus during the trip as the complainants and some witnesses reported, but that he was primarily located at the back of the bus in charge of the music. ▇▇▇ (p. 20) supports this claim. However, in addition to the reports by the complainants, there were reports from several other witnesses who said that ▇▇▇ was moving about the bus. (See paragraph 3 of §II A above). In addition, ▇▇▇ said that he did not recall anyone in particular being in charge of the music (p. 21).

(D) ▇▇▇ also claimed that the statements of many of the witnesses are not to be trusted because these witness are friends of or live together with one or both of the complainants. However, the Panel does not regard statements made by those who know some of the parties as not credible simply by virtue of such connections to the parties. This is especially so when the accounts of the witnesses are distinct and independent as they are in this case.

Thus each of the four main elements of ▇▇▇ attempt to explain away or undermine the reports of witnesses about his behavior on the bus is not convincing. The Panel finds the accounts offered by the complainants and by many of the other witnesses more consistent and credible.

*Conclusion*

The Panel concludes by a preponderance of the evidence that ▇▇▇ violated Yale's sexual misconduct policy by groping ▇▇▇ on the bus to Cambridge on November 18, 2016.

**III. Complaint of** ▇▇▇

▇▇▇ alleges that, during the bus trip, after ▇▇▇ sat down next to her, while saying, "I want to fuck you", he groped her breast and buttock.

6

_____ denies that any of this behavior reported by _____ took place. He denies groping _____. He denies sitting next to _____ at any time. He denies saying "I want to fuck you" to her (p. 14).

The Panel finds the account of _____ more credible for the following reasons. The Panel notes that no witness reported seeing _____ grope _____. Nonetheless – in contrast to _____ account of his interactions with _____ – several witnesses report observing _____ interact with _____. These reports are consistent with _____ account and inconsistent with _____ recollection.

(1) _____ reports that she saw _____ slide onto the ledge next to _____ and put his arm around her. _____ reports noticing that _____ looked uncomfortable (p. 18).

(2) _____ reported to the fact-finder that he saw _____ put his arm around _____. It was _____ sense that _____ was "sexually pestering" _____. It also seemed to _____ that _____ was talking to _____ and telling him to get himself under control (p. 18).

(3) _____ reports that he saw _____ sitting very close to _____ and "relentlessly leaning into her." _____ reports that _____ looked very uncomfortable while _____ seemed to be talking into her ear (p. 19).

(4) _____ reports that she did see _____ trying to move away from _____ on the bus (supplement, p. 3).

Further corroborating evidence for _____ allegation comes from the fact that three witnesses report that they heard _____ say that _____ had groped or behaved inappropriately with her:

(1) _____ reports that near the end of the bus trip _____ told her that she had been groped by _____.

(2) _____ reports that, after the bus trip, _____ told her that she had been groped by _____.

(3) _____ reports that on the bus or soon after getting off the bus, she heard _____ speaking adamantly about being uncomfortable with the way _____ had behaved with her (supplement, p. 3).

The Panel finds _____ defense against this allegation by _____ unpersuasive for reasons given in paragraphs (A) through (D) in § II of this report.

In addition to denying _____ allegations, _____ defends against the allegation by claiming (as in response to _____ allegation) that he was not moving around the bus, that other students have an animus directed against him because he was late in arriving at the bus and because of his political beliefs, and that bus-riders may have mistaken his

7

consensual close and intimate dancing and roughhousing with ███████ and ███████ ███████ for unwanted groping of other women in the bus. As in the case of ███████ ███████ response to the allegations from ███████ and for the same reasons that were presented earlier in this report, the Panel finds these claims by ███████ not to be supported by the information before the Panel.

### Conclusion

Thus the Panel concludes by a preponderance of the evidence that ███████ violated Yale's sexual misconduct policy by groping ███████.

**IV.** ███████ **complaint of hostile climate**

███████ further alleges that ███████ behavior toward ███████ and his behavior toward other women which ███████ witnessed created a hostile academic environment for ███████.

The Panel finds this allegation credible based on the following:

(1) ███████ groping behavior toward ███████ in Paris in June 2016 and on the bus to Cambridge in November 2016. The Panel explained earlier in this report why it finds, by a preponderance of the evidence, that such groping did occur.

(2) ███████ assertion that on the bus ███████ grabbed her by the forearm close to the wrist and tried to pull her down onto him. She reports that the incident felt sexual, as ███████ was trying to pull ███████ onto him, but it also felt like a threat of violence and acute physical danger (p. 6). ███████ denies this claim, but, given the credible testimony of a number of witnesses about ███████ aggressive behavior toward women in general on the bus, the Panel finds ███████ report about this matter credible. Such behavior contributes to the creation of a hostile academic environment for ███████.

(3) Also supporting the claim of the creation of a hostile academic environment is ███████ reporting of seeing ███████ drunken groping of many other women on the bus (p. 6). ███████ claim here is supported by the reports of other bus-riders, many of whom reported that they were troubled enough by what they observed of ███████ behavior during the bus ride that they took steps to try to prevent further incidents. ███████ and ███████ decided to intervene by trying to place themselves physically between ███████ and other women. ███████ also reported trying to put himself between ███████ and women on the bus. ███████ confronted ███████ acting very aggressively toward her friend by saying, "Would you please stay away from her." ███████ recalls a male pulling ███████ away from one of the women.

8

████ denies ████ claim about the creation of a hostile environment on the bus. For the reasons discussed in §II above, the Panel does not find ████ denials credible.

(4) Part of ████ claim that ████ behavior created a hostile academic environment for her is based on her claim to have witnessed ████ acting very aggressively towards one of the women at a Fence Club Party in November of 2016. ████ reported to the Panel that ████ was pressed extremely close to the woman, leaning into her, and the woman looked extremely uncomfortable, as was visible in her body language and facial expression. ████ reported that the incident made ████ uncomfortable and concerned for the woman in question (p. 4).

████ denies any inappropriate behavior at the Fence Club party. However, ████ who was at the party reported observing ████ behaving aggressively and inappropriately toward a woman at the party. And, ████, a member of the Fence club and one of its officers, who was also at the party, reported seeing ████ "careening around the dance floor, stumbling and falling all over women" (p. 17). ████ also reported that a woman came up to her and complained about ████ aggressive behavior (p. 17). In addition, ████, a member of the Fence Club who had invited ████ to the party, reported that he received an e-mail message from the Fence Club the next day that was in direct response to ████ behavior at the party. This message indicated that a woman complained to the club ████ that ████ had behaved inappropriately with her (p. 17). Further ████ reported to the fact-finder that he informed ████ that ████ was no longer allowed to come to Fence functions as a result of his behavior at the party and ████ expressed remorse (p. 17). These various reports about ████ behavior at the Fence Club corroborate ████ claim that she observed ████ behaving aggressively toward a woman at the party.

████ observation of this incident lasted only a few seconds and, standing alone, it may not be sufficient for the creation of a hostile environment. However, her observation of this incident – taken together with ████ experience of being groped in Paris and on the bus to Cambridge and taken together with the events ████ observed on that bus ride – is another component of the allegation that ████ conduct had the effect of creating a hostile environment for ████. The Panel finds that the behavior witnessed by ████ at the Fence Club party contributed to the creation of a hostile environment for ████.

### Conclusion

On the basis of ████ account and on the basis of the corroborating evidence in (1)-(4) immediately above, the Panel finds by a preponderance of the evidence, that ████ conduct had the effect of creating a hostile academic environment for ████

9

**A note about texting during the hearing**

During the hearing – in response to one of the questions posed by ▇▇▇ to ▇▇▇ – ▇▇▇ revealed to the Panel that she and ▇▇▇ had exchanged text messages during the hearing.

To determine whether there had been collusion between the complainants during the hearing, the Panel requested copies of the text messages. ▇▇▇ and ▇▇▇ separately provided the messages to the Panel, and the messages were shared with the respondent (see attached A and B), and the Panel asked the complainants whether the messages provided were the extent of the exchanges between them at the hearing. The complainants did confirm that this was the extent of the text messages. After reviewing the messages, the Panel provided ▇▇▇ with the opportunity to ask each complainant, through the Panel, questions about the texting.

Although the content of the messages was unfortunate because of the disrespectful manner in which the proceedings were discussed, the Panel did not find that these messages contained evidence of collusion.

Further, the Panel considered whether the nature of the exchanges – one of which mentioned wanting to vomit for "dramatic effect" at the hearing – damaged the credibility of the complainants. The Panel finds that, despite the content of the text messages, the complainants were credible. Moreover, the Panel finds that their accounts were consistent with and supported by the statements of many of the witnesses.

Respectfully submitted,

Margit Dahl
Michael Della Rocca (chair)
Paul Genecin
Airenakhue Omoragbon
Arthur Swersey

Attachments A and B

**EXHIBIT A**